## UNITED STATES *v.* MARTINEZ.

APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 169. Argued and submitted January 31, 1902.—Decided March 3, 1902.

Under the Court of Private Land Claims Act a party holding from the Spanish or Mexican government a title that was complete and perfect at the date of the treaty, may apply for a confirmation of such title upon condition that, if any portion of such lands has been sold or granted by the United States to any other person, such title from the United States to such other person shall remain valid; and in such case the grantee

may obtain judgment against the United States for the value of lands so granted.

Though the act requires that the petitioners shall set forth in their original petition the names of such adverse patentees, or persons in possession, if it be admitted that such adverse possessors or claimants do hold under grants from the United States, and there is no dispute as to boundaries, they need not be made parties, as they could not be affected by the decree.

So while the act contemplates that notice shall be given such adverse holders, and the claim for a money judgment incorporated in the original petition, relief would not be refused solely upon that ground, if sufficient excuse were shown for the omission to make these grantees parties.

But where the original petition for confirmation alleged that there were no such adverse holders or claimants, and no effort appears to have been made to ascertain the facts for more than seven years after such petition was filed, although it appeared such facts were easily ascertainable, it was held that some excuse should be set forth for this long delay, and that a supplemental petition for the value of the lands patented would not be entertained.

THIS was a petition, under the fourteenth section of the Court of Private Land Claims Act, for a money judgment against the United States for lands within a Spanish land claim, which lands had been patented by the United States to third parties before the Spanish land grant had been acted upon or confirmed.

The original proceeding, out of which the present claim for indemnity grew, was a suit begun February 28, 1893, by the present appellees, who, with one exception, claimed to be the heirs at law and legal representatives of Juan José Lobato, against the United States, in the Court of Private Land Claims, for the confirmation of a grant alleged to have been made to Lobato August 24, 1740, of which juridical possession was given, and the grant ratified and confirmed by the proper authorities June 15, 1744. In their petition it was alleged that the same tract had been previously granted to Cristobal de Torres, but that his grant had been revoked in 1733 and the tract declared to be crown lands; that from the date of the grant to Lobato in 1740 and for a period of 153 years, (down to the time of filing the petition,) he and his legal representatives had been in peaceable adverse possession of the same, and that "there are no adverse holders, possessors or claimants of or to any portion

of said tract." The suit resulted in a decree in favor of the claimants (appellees) confirming the grant, and finding the title complete and perfect in the claimants, at the date of the cession by the treaty of Guadalupe Hidalgo. The decree fixed the boundaries of the tract as shown in a map annexed to the petition. From this decree no appeal was prosecuted, and becoming final, it was executed by a survey approved by the court, and the land patented to the grantees.

More than six years after the confirmation of the Lobato grant the petitioners filed the present petition, alleging that several parcels of land, amounting to 2056 acres in the aggregate, had been disposed of, granted and patented by the United States to certain persons named in an exhibit to the petition; that the lands so granted lay wholly within the boundaries of the Lobato grant as confirmed, and were among the most valuable parts of such grant. The petition concluded with a prayer for judgment against the United States for the value of the lands so patented.

The United States answered, admitting the confirmation of the Lobato grant, and averring that the plaintiffs neglected to make the holders of the patented land parties defendant to the suit as required by law, but that they proceeded to try their cause, obtain a degree of confirmation, which had long since become final; and that by failure to make the patentees parties defendant, and by averring that there were no adverse claimants to any portion of the tract, "they thereby waived and disclaimed all right, if any they had, to challenge any disposition theretofore made under the laws of the United States to any portion of said grant."

The petitioners filed a general demurrer to this answer, accompanied by an affidavit to the effect that the plaintiffs, until the survey of said grant, did not and could not know or certainly allege and affirm that the lands granted and disposed of by the United States, as set forth in their petition, were within the exterior limits of their grant, and consequently no allegation with relation thereto was made in their original petition, and that such knowledge only came to the petitioners within the last two years.

The demurrer to the answer was sustained, the case submitted upon an agreed statement of facts, and a judgment rendered against the United States for $2320.91, for 1856.73 acres, at $1.25 per acre, in accordance with the prayer of the petition—Justices Sluss and Murray dissenting.

*Mr. Solicitor General Richards* and *Mr. Matthew G. Reynolds* for the United States.

*Mr. George Hill Howard* and *Mr. Henry M. Earle* for appellees submitted on their brief.

MR. JUSTICE BROWN delivered the opinion of the court.

This case raises the question whether, after a land grant has been confirmed by the Court of Private Land Claims, that court may, after an unexplained delay of over six years, entertain a supplemental petition for the value of certain parcels disposed of and patented by the United States to third parties, before the filing of the original petition.

The following sections of the Court of Private Land Claims Act, 26 Stat. 854, act of March 3, 1891, c. 539, are pertinent in this connection :

"SEC. 6. That it shall and may be lawful for any person . . . claiming lands within the limits of the territory derived by the United States from the Republic of Mexico . . . by virtue of any such Spanish or Mexican grant . . . which . . . have not been confirmed by act of Congress, . . . *and which are not already complete and perfect,* in every such case to present a petition, in writing, to the said court," etc. . . .

" The petition shall set forth fully the nature of their claims to the lands, . . . *the name or names of any person or persons in possession of or claiming the same, or any part thereof,* otherwise than by the lease or permission of the petitioner; . . . and a copy of such petition, with a citation to any adverse possessor or claimant, shall, immediately after the filing of the same, be served on such possessor or claimant in the ordinary legal manner of serving such process in the proper State or Territory," etc.

"Sec. 8. That any person or corporation claiming lands in any of the States or Territories mentioned in this act under a title derived from the Spanish or Mexican government *that was complete and perfect* at the date when the United States acquired sovereignty therein, shall have the right (but shall not be bound) to apply to said court in the manner in this act provided for other cases of confirmation of such title.

\* \* \* \* \* \* \* \*

"8. If in any such case a title so claimed to be perfect shall be established and confirmed, such confirmation shall be for *so much land only* as such perfect title shall be found to cover, *always excepting any part of such land that shall have been disposed of by the United States,*" etc.

"Sec. 14. That if in any case it shall appear that the lands or any part thereof decreed to any claimant under the provisions of this act shall have been sold or granted by the United States to any other person, *such title from the United States to such other person shall remain valid, notwithstanding such decree,* and upon proof being made to the satisfaction of said court of such sale or grant, and the value of the lands so sold or granted, such court shall render judgment in favor of such claimant against the United States for the reasonable value of said lands so sold or granted, exclusive of betterments, not exceeding one dollar and twenty-five cents per acre for such lands ; and such judgment, when found, shall be a charge on the Treasury of the United States."

Under these sections the holder of a complete and perfect title may resort to either of two remedies : he may bring suit in the local courts upon his title against any one in possession of the land covered by the grant, or any portion of it, *United States* v. *Pellerin,* 13 How. 9 ; *Ainsa* v. *New Mexico & Arizona Railroad,* 175 U. S. 76 ; or, he may file his petition in the Court of Private Land Claims under section 8, subject to the condition, that the " confirmation shall be for so much land only as such perfect title shall be found to cover, always excepting any part of such land that shall have been disposed of by the United States." In such case, however, while he affirms the title of the patentee of the United States he may, under section 14, if " it

shall appear that the lands or any part thereof decreed to any claimant . . . shall have been sold or granted by the United States to any other person," recover a money judgment against the United States "for the reasonable value of said lands so sold or granted."

As the petitioners in this case elected the latter remedy they are entitled to a recourse against the United States to recover the value of the land patented, unless they have in some way estopped themselves to make the claim at this time. The argument of the Government in this connection is that, under section 6, the petitioners were bound to set forth in their original petition "the name or names of any person or persons in possession of or claiming the same, or any part thereof, otherwise than by the lease or permission of the petitioners," and that "a copy of such petition, with citation to any adverse possessor or claimant, shall, immediately after the filing of the same, be served upon such possessor or claimant in the ordinary legal manner," etc., whose duty it shall be to enter an appearance and plead, answer or demur to said petition; in default of which the court is at liberty to proceed to hear the case upon the petition and proofs presented. Apparently, however, the only object of requiring notice to be given the adverse possessors or claimants is to compel them to show the location and boundaries of their claims and that they are not mere squatters or trespassers, but hold the land under a grant from the United States, in which case, under section 14, such title from the United States to such other person "shall remain valid notwithstanding such decree." If, however, it appear, as it does in this case, that the petitioners admit that the adverse possessors or claimants do hold under grants from the United States, and there are no disputed boundaries, there would appear to be no substantial reason for making them parties, inasmuch as they could not be affected by the decree. The only consequence of an omission to serve on them a copy of the petition is an acknowledgment of their title and of its boundaries.

The Government could doubtless exonerate itself from payment by showing that it had never granted or disposed of the

lands; but no attempt of that kind was made, and the proof that the lands were entered under the homestead laws and subsequently patented comes from the land office at Santa Fé, as well as by the express stipulation of the parties. It is true that in *United States* v. *Moore*, 12 How. 209, 223, it was said with regard to a similar act that persons holding under patents from the United States "should be compelled to produce their title, so that, if a decree was made for complainant, the court could ascertain what part of the land should be granted to him by patent; and as this could only be done by a specific ascertainment of interfering claims, the decree must of necessity specify their boundaries and quantities." But where, as in this case, the quantities and boundaries of the lands patented or otherwise disposed of are expressly stipulated between the United States and the claimants of the land grant, and the rights of the entrymen cannot be affected by the decree, we see no occasion for making them parties.

The second objection is that the language of section fourteen, "that if *in any case* it shall appear that the lands or any part thereof . . . shall have been sold or granted," limits the recovery of the value of such lands to cases wherein it appears in the original petition for confirmation that such lands have been granted, and that the original petition in this case having gone to a decree affirming the survey, the court lost control of the grant; and in addition thereto that the petitioners had, by the lapse of six years, waived and abandoned their claim, and are guilty of inexcusable laches. The original petition for confirmation was filed February 28, 1893, the decree of confirmation pronounced December 4, 1893, and the decree approving the survey October 19, 1895. The present petition for the value of the lands granted was filed April 23, 1900, over seven years after the original petition was filed, and over four years from the time of the decree approving the survey. While section fourteen evidently contemplates that the names of the adverse holders shall be set forth in the original petition, that notice shall be given them and that the claim for a money judgment for the lands granted them, shall be incorporated therein, we should not refuse relief solely upon that ground, if sufficient

excuse were shown for the omission to make these grantees parties; since it might well be that, if the grant were a large one and its boundaries indefinite or unsettled, entries might inadvertently be made within the exterior limits of such grant and patents issued therefor in good faith and without the knowledge of the original grantee. In such event the right to reimbursement ought not to be denied, if due diligence to ascertain the facts were exercised at the time the petition for confirmation was filed.

But we are unwilling to admit that a claimant may wait an unlimited time and then, upon a simple allegation that certain lands within the grant had been disposed of, may recover their value. We think the claimant is bound to act with promptness, and if a long delay has occurred, to explain it by proper averments. The original petition for confirmation in this case not only suggested no adverse claimants, but alleged positively that "there are no adverse holders, possessors, or claimants of or to any portion of said tract," when a simple reference to the records of the land office at Santa Fé would have shown the facts stated in Exhibit A annexed to the petition in this case, that fifteen homesteads had been entered upon this tract before the original petition was filed, in all but five of which patents had already issued. Not the slightest effort appears to have been made to ascertain these facts, and it was not until more than seven years thereafter that the petition in this case was filed. The petition sets forth that several parcels of land, aggregating 2056 acres, within the Lobato grant, were disposed of by the United States to other parties, but there is no allegation explaining why these grantees were not made parties to the original petition, or why the long delay occurred in making the claim for a money judgment.

The answer of the United States sets up the failure of the petitioners to make the patentees parties to the original petition, and alleges that they thereby waived and disclaimed all right to a money judgment. Upon the same day this answer was filed, April 26, 1900, a demurrer thereto was filed, together with a deposition or affidavit setting up the fact that "prior and up to the survey of said grant, under the decree of con-

firmation," neither the original claimants nor their solicitor "knew or could know, or certainly allege and affirm, that the lands granted and disposed of by the United States as set forth and shown in the above said petition were within the exterior limits of the said Lobato grant," and that the facts were not ascertained "until within the past two years." How this affidavit came upon the record is not shown. No order was made permitting it to be filed. No reference to it or to the allegations it contains was made in the stipulation or agreed statement of facts upon which the case was tried, nor in the finding of facts incorporated in the decree of the court. For aught that appears, it was thrust upon the files without authority. But even if the affidavit were treated as a proper part of the record, it fails to show the slightest diligence to ascertain the real facts, although a map annexed to the original petition exhibited the claimed boundaries of the tract, and a reference to the records of the land office would have shown the description of each parcel entered as a homestead. Indeed it virtually confesses a neglect to file the petition for two years after the facts came to the knowledge of the petitioners.

The case then comes to this: Whether upon a petition for value filed seven years after the original petition for confirmation, a decree against the United States can be entered upon a simple allegation that certain parcels had been conveyed and patented by the United States, without showing some excuse for the delay in presenting the petition, or some diligence in ascertaining the real facts. Under the Court of Claims Act petitions must be presented to that court within six years from the time the cause of action accrues, act of March 3, 1887, c. 359, 24 Stat. 505, and while there is no limitation of the time for petitions of this character to be filed in the Court of Private Land Claims, we have held that a similar act required that cases should be heard and disposed of upon equitable principles, and that we were "bound to give due weight to lapse of time." *United States* v. *Moore*, 12 How. 209, 222; *Indiana* v. *Kentucky*, 136 U. S. 479, 509, 510. We think there has been such unexplained delay in this case as to justify the court in holding that petitioners had abandoned their claim for a pecuniary judgment.

*The decree of the Court of Private Land Claims is therefore
reversed, and the case remanded to that court for further
proceedings not inconsistent with this opinion.*

MR. JUSTICE HARLAN and MR. JUSTICE GRAY did not sit in
this case.