[Civil No. 1024.   Filed March 27, 1908.]

[95 Pac. 103.]

R. R. RICHARDSON et al., Defendants and Appellants, v. SANTIAGO AINSA, Administrator with the Will Annexed of the Estate of FRANK ELY, Deceased, Plaintiff and Appellee.

1. APPEAL AND ERROR—LAW OF THE CASE.—Where the supreme court of the United States in an appeal from a judgment dismissing the cause for want of jurisdiction of the trial court over the subject matter, which adjudges that the court had jurisdiction, has passed upon the question, this is the law of the case on a subsequent trial.

2. STATUTES—CONSTRUCTION—STRICT—WHEN IN DEROGATION OF THE COMMON LAW.—The construction of the United States statutes creating a court of private land claims wherever in derogation of the common-law rights must be strict.

3. PUBLIC LANDS—MEXICAN GRANTS—CONFIRMATION—EFFECT—ACT OF CONGRESS CREATING COURT OF PRIVATE LAND CLAIMS CONSTRUED.— Act of Congress *supra*, which created the court of private land claims with jurisdiction to determine the rights of the claimant under Mexican land grants, provides that where land decreed to any claimant shall have been granted by the United States to another, the title of the land shall remain valid. *Held*, that this latter provision does not apply to confirmation of grants in suits instituted by the government against the claimants who do not voluntarily appear to obtain the benefits of the act. And where the court, in a suit by the government against plaintiff and defendant, confirmed a grant to plaintiff without excepting the lands of the defendant, although by the pleadings the attention of the court was called to the fact that titles had been issued to portions of the grant to the defendant by the United States, plaintiff obtains title, and is entitled to quiet title as against defendant.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Santa Cruz. John H. Campbell, Judge.   Affirmed.

The facts are stated in the opinion

J. B. Wright, for Appellants.

Between the twenty-second day of July, 1854, and the third day of March, 1891. (date of act creating court of private land claims), the only tribunals that had jurisdiction to try title to

land grants were the surveyor general of New Mexico and Arizona, and the Congress of the United States. *Astiazaran* v. *Santa Rita Min. Co.,* 148 U. S. 80, 13 Sup. Ct. 457, 37 L. Ed. 376. This suit was instituted on June 24, 1887, or almost four years prior to the enactment of the court of private land claims act. Therefore, under the decision of *Astiazaran* v. *Santa Rita Mining Co.,* aforesaid, the court had no jurisdiction, and the supreme court of the United States committed a grave error, through a mistake of fact, when it decided that our lower court had jurisdiction of this identical case, as it was so instituted prior to the passage of the court of private land claims act, while the case which the supreme court followed (*Ainsa* v. *New Mexico & A. R. R.,* 175 U. S. 76, 20 Sup. Ct. 28, 44 L. Ed. 78), in deciding this case now at bar, supposing the facts the same, was instituted subsequent to the passage of the court of private land claims act.

The provisions of the court of private land claims act are clear (appellant contends) that in all cases lands theretofore patented by the United States must be eliminated from the grants. The patent to the grant expressly provides that it is made subject to the provisions of said act of Congress. Therefore, the defendant Richardson, as to the two pieces of land originally granted by the United States to Morgan and Ryan, is entitled to judgment. See *United States* v. *Conway,* 175 U. S. 60, 20 Sup. Ct. 13, 44 L. Ed. 72; *Real de Dolores* v. *United States,* 175 U. S. 75, 20 Sup. Ct. 17, 44 L. Ed. 76; *Botiller* v. *Dominquez,* 130 U. S. 238, 9 Sup. Ct. 525, 32 L. Ed. 926; *United States* v. *Martinez,* 184 U. S. 441, 22 Sup. Ct. 422, 46 L. Ed. 632; *United States* v. *Baca,* 184 U. S. 653, 22 Sup. Ct. 541, 46 L. Ed. 733.

S. M. Franklin, for Appellee.

As the supreme court of the United States, in this particular case, has held that the lower court had jurisdiction, that question is forever settled; it is the law of this case and is not subject to consideration or review again. 26 Am. & Eng. Ency. of Law, pp. 184-186, and authorities there cited; *Snyder* v. *Pima County,* 6 Ariz. 45, 53 Pac. 6, 7; *United States* v. *Camou,* 184 U. S. 572-577, 22 Sup. Ct. 505, 46 L. Ed. 694, 697; *Illinois ex rel. Hunt* v. *Illinois Cent. R. Co.,* 184 U. S. 77-79, 22 Sup. Ct. 300, 46 L. Ed. 440-449; *Sibbald* v. *United States,* 12 Pet. 488, 492, 9 L. Ed. 1167; *Thompson* v. *Max-*

*well Land Grant & R. Co.,* 168 U. S. 451, 471, 18 Sup. Ct. 121, 42 L. Ed. 539, 547.

"The cession of a territory by its name from one sovereign to another, conveying the compound idea of surrendering at the same time the lands and the people who inhabit them, would be necessarily understood to pass the sovereignty only, and not to interfere with private property." *United States* v. *Percheman,* 7 Pet. 86, 87, 8 L. Ed. 604; *Ainsa* v. *N. M. & A. R. Co.,* 175 U. S. 81-84, 20 Sup. Ct. 28, 44 L. Ed. 78-84. But the Gadsden treaty by its terms provided that the rights to private property, within the ceded territory, should be protected, or, to quote the United States supreme court on the subject: "This government promised to inviolably respect the property of Mexicans." *Ely* v. *United States,* 171 U. S. 239, 18 Sup. Ct. 840, 43 L. Ed. 149. So that under the law of nations, and under the provisions of the treaty of cession, the rights of Leon Herreras and his grantees to the lands so patented to him by Mexico in 1825 were not altered, changed or diminished when the sovereignty changed to the United States. *Dent* v. *Emmeger,* 14 Wall. 308, 314, 20 L. Ed. 838; *Trenier* v. *Stewart,* 101 U. S. 797-810, 21 L. Ed. 1021. These patents are void, utterly void, because the United States never had any title to the land. It never had anything to convey. They are also void, for the reason that the officers who executed the patents had no authority to do so. The power given to the president to issue patents to public lands of the United States, under the public land laws, does not authorize him to issue patents to private lands, or any lands except public lands of the United States. *Knight* v. *United Land Assn.,* 142 U. S. 161, 216, 12 Sup. Ct. 258, 35 L. Ed. 974; *Easton* v. *Salisbury,* 21 How. (U. S.) 426-432, 16 L. Ed. 181, where the court says: "The President of the United States has no right to issue patents for lands, the sale of which is not authorized by law." Under section 8, act of Congress of March 3, 1891, no land could be excluded from the confirmation of a perfect grant when the United States itself brought the claimant involuntarily into court to test the validity of his title, and no land was or could be excluded from the confirmation of the Sonoita grant. *Ely's Admr.* v. *Magee,* 34 L. D. 506-517.

SLOAN, J.—This suit was originally brought in the district court of Pima county by one Frank Ely in 1887, and was entitled *"Frank Ely* v. *New Mexico & Arizona Railroad Com-*

*pany et al.*'' The complaint was in form one to quiet title, the subject matter of the action being a Mexican land grant situated in Santa Cruz county, and known as the "Rancho San Jose de Sonoita." The grant, at the time the suit was brought, was unconfirmed. The defendants, of whom there were a large number, demurred to the complaint upon the ground that it did not state a cause of action, in that it appeared therein that the plaintiff was not in the possession of the grant, and in order to maintain the action was required to show that he was without adequate remedy at law, and to set up grounds for equitable relief. This demurrer was sustained. This court affirmed this ruling of the district court, whereupon the plaintiff appealed to the supreme court of the United States, which reversed the judgment of this court, and remanded the cause for trial. In 1893, Ely having in the meantime died, and Santiago Ainsa, as administrator with the will annexed, having been substituted as plaintiff, the case was tried on its merits, and judgment entered dismissing the case upon the ground that the court had no jurisdiction over the subject matter of the action, for the reason that it appertained to the title of an unconfirmed Mexican land grant. This judgment was affirmed on appeal by this court, but subsequently reversed by the supreme court of the United States. *Ainsa* v. *New Mexico etc. R. Co.,* 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84. The holding of the supreme court of the United States was that, after the passage of the act of Congress, approved March 3, 1891, chapter 539, 26 Stat. 854 (U. S. Comp. Stats. 1901, p. 765), establishing the court of private land claims, the courts of this territory had jurisdiction, as between private parties, to determine the title of an unconfirmed Mexican grant, which had not been rejected by, or was not pending before, Congress, and which was asserted to be complete and perfect at the date of the cession. It was therefore found that the court had jurisdiction of the case. The complaint was amended by consent on the twenty-seventh day of September, 1907, in the respect that certain defendants were omitted from the suit, among them being the railroad company, and certain additional facts being set up. The essential allegations of this amended complaint are: That the plaintiff, as administrator with the will annexed of the estate of Frank Ely, deceased, is the owner in fee of the grant in question; that at the time of the Gadsden Purchase this grant was complete and perfect; that in 1902 the United

States brought suit in the court of private land claims against plaintiff and the defendants in this suit to try the title of said grant; that thereafter said court of private land claims confirmed said grant in plaintiff as a valid, complete, and perfect grant at the date of the cession, and specifically described the boundaries thereof; that thereafter, in pursuance of said decree of confirmation, the United States issued its patent to said grant to the original grantee from the Mexican government, his heirs, successors in interest, and assigns; that the defendants and each of them were, without any right, title, or interest, asserting claims to the lands included within the boundaries of said grant as thus confirmed and patented. The defendants in their answer, among other defenses, set up various patents from the United States issued before the original suit, under the various land laws of the United States, and prayed that these titles be quieted as against plaintiff. The cause was tried upon the issues thus presented, and judgment rendered in favor of the plaintiff. From this judgment the defendant R. R. Richardson has appealed.

Counsel for appellant has raised two questions by his assignments of error: First, that the lower court had no jurisdiction over the subject matter of the action; second, that under the provisions of the act of Congress creating the court of private land claims appellant's lands, having been theretofore patented by the United States, were eliminated from the grant, notwithstanding the confirmation of the title by the court of private land claims and the patent from the government.

1. The question of jurisdiction, whatever might otherwise have been open to adjudication by us in this respect, has been definitely settled adversely to the contention of appellant by the supreme court of the United States upon the second appeal in this cause. The question of jurisdiction was directly decided in that case, and this ruling has become the law of the case. *United States* v. *Camou,* 184 U. S. 572, 22 Sup. Ct. 505, 46 L. Ed. 694; *Thompson* v. *Maxwell Land Grant & R. Co.* 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539; *Snyder* v. *Pima County,* 6 Ariz. 41, 53 Pac. 6.

2. The act creating the court of private land claims conferred upon it jurisdiction in three classes of cases. The first class included suits brought by claimants of Mexican land grants which, at the time of the passage of the act, were unconfirmed or not otherwise finally decided upon, and which

were not already complete and perfected, to have such grants validated and confirmed and their boundaries ascertained. The second class included suits brought by claimants of grants which had not been acted upon by Congress, and which were asserted to have been complete and perfect at the time of the cession from Mexico to the United States of the territory wherein they might lie, to have the titles to such grants confirmed and their boundaries ascertained. As to such latter cases the act specifically provided that ''confirmation shall be for so much land only as such perfected title shall be found to cover, always excepting any part of such land that shall have been disposed of by the United States,'' etc. The third class included suits brought by the United States against claimants of grants who should not voluntarily apply to said court for the confirmation of said grants in cases where, in the opinion of the attorney general, the titles to such grants should be adjudicated and the boundaries ascertained.

Section 14 of the act reads as follows: ''That if in any case it shall appear that the lands or any part thereof decreed to any claimant under the provisions of this act shall have been sold or granted by the United States to any other person, such title from the United States to such other person shall remain valid, notwithstanding such decree, and upon proof being made to the satisfaction of said court of such sale or grant, and the value of the lands so sold or granted, such court shall render judgment in favor of such claimant against the United States for the reasonable value of said lands so sold or granted,'' etc.

The question presented is whether said section 14 applies to those cases which, under the provisions of the act, might be brought against grant claimants who might not voluntarily sue for the confirmation of their titles, and whose titles, in suits brought by the United States, should be found by the court of private land claims to have been complete and perfect, and who should receive patents to the lands included within the boundaries of the grants confirmed to them. It has been held by the supreme court of the United States in *United States* v. *Martinez,* 184 U. S. 441, 22 Sup. Ct. 422, 46 L. Ed. 632, that said section 14 of the act does apply to the second class of cases we have enumerated, and that one holding a Mexican land grant by perfect and complete title, who brought suit in the court of private land claims for the confirmation of his title, did so upon the condition that, if any

portion of such lands might be found to be sold or granted by the United States to another person, the title from the United States to such other person should remain valid, and that in such case he might obtain judgment against the United States for the value of the land so granted. We know of no case, however, decided by the supreme court of the United States, or by any federal or state court, in which the precise question here presented has been decided.

The Secretary of the Interior, in the case of *Ely's Admr.* v. *Magee,* 34 L. D. 506, has construed the act as limiting the application of said section 14 to cases of confirmations of grants where the grant claimants have brought suit in the court of private land claims, and as not applying to cases of confirmation of grants in suits brought by the government against claimants who have not voluntarily appeared in said court to obtain the benefits of the act. The secretary in his decision points out the distinction between the two classes of claimants, and applies to the latter the doctrine expressed in *Ainsa* v. *New Mexico & Arizona Railroad Company, supra,* that the private holder of any complete and perfect grant may, at his election, have its validity determined as against the United States in the court of private land claims, but that in case he should not so elect his title will nevertheless be valid and enforceable in the ordinary courts of justice, and under the treaty with Mexico he is entitled to have his title recognized in the latter courts as the absolute owner in fee of such grant. He distinguishes between the case of one voluntarily seeking relief under the act in the court of private land claims, and the case of one who was brought into such court at the suit of the United States. The reasoning is that the claimant who chose to avail himself of the act, and who brought suit, was bound by the terms imposed, and must be held to have accepted the condition that he should not have decreed to him, in any such suit, land the title to which had passed to other parties from the United States. In the latter case the appearance of the grant claimant not being voluntary, and he not being bound by the act to invoke the aid of the court in the settlement and confirmation of his title, and having all the title that was necessary to enforce his rights as the owner of the grant in the ordinary courts of justice, the act should not be construed as intending that the suit brought by the United States should operate arbitrarily to confiscate his claim or any portion thereof against his consent;

that before such a construction should be given the act, it being in derogation of a common-law right, it ought to clearly appear from the statute, which, in such case, is to be strictly construed.

The record in this case discloses that the court of private land claims did not except the lands, or that of any other of the defendants from its decree of confirmation, although by the pleadings it appears that its attention was called to the fact that titles had been issued to portions of the grant by the United States to said defendants. We infer from this, therefore, that the court of private land claims construed the act as did the Secretary of the Interior in the Magee case. The reasoning of the secretary in the latter case is convincing, and, no other authority appearing to the contrary, we adopt his construction of the act. It follows, therefore, that appellant's lands were not excepted from the confirmation of the grant and from the patent of the government.

The judgment is therefore affirmed.

KENT, C. J., and DOAN and NAVE, JJ., concur.